UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES A. LOCKETT,

        Plaintiff,

                                    Case No. 2:05-cv-187

v.                                      HON. R. ALLAN EDGAR

JOE SUARDINI, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

        Plaintiff James A. Lockett, an inmate currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC).  Specifically, Defendants include Resident Unit Officer Joe Suardini, Resident Unit Officer H. Irvine, Unknown Blackford, R.N., and Unknown Galloway, R.N., all of whom are employed at LMF.

        Plaintiff's complaint alleges that on July 21, 2004, he was escorted to "court" for a misconduct hearing by Defendants Suardini and Irvine.  During the misconduct hearing, it became apparent to Plaintiff that Hearing Officer Maki was "in cahoots" with staff.  Plaintiff became upset and told Maki that she was a "foul and corrupted bitch."  During this exchange, Plaintiff was sitting in a chair with his hand cuffed behind his back and bolted to a floor hook.  Defendant Suardini responded to this comment by grabbing Plaintiff from the chair and throwing Plaintiff out of the room and down the stairs.  Defendant Suardini then grabbed Plaintiff by the throat with his right hand, so Plaintiff bit the hand.  At the same time, Defendant Irvine began attacking Plaintiff by holding the strap to the handcuffs and attempting to break the first two fingers of Plaintiff's right

hand.  Defendants Suardini and Irvine continued to assault Plaintiff all the way to his cell, where he was placed in soft restraints.  Plaintiff claims that he was attacked by Defendants Suardini and Irvine because he exercised his First Amendment right to free speech.

In his complaint, Plaintiff alleges that on July 21, 2004, he informed Defendant Blackford that he had been assaulted and showed her open wounds on each of his hands from the handcuffs.  In addition, Plaintiff showed her the open wounds on the center of his forehead and on his right knee.  Plaintiff complained of pain from his injuries, but Defendant Blackford refused to give him treatment.  The following day, Plaintiff showed his injuries to Defendant Galloway, who also refused to treat Plaintiff.

Plaintiff claims that Defendants' actions violated his rights under the First and Eighth Amendments to the United States Constitution.  Plaintiff is seeking compensatory and punitive damages, as well as equitable relief.

Presently before the Court is Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56.  Plaintiff has filed a response and the matter is ready for decision.  Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct

evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In their motion for summary judgment, Defendants assert that Plaintiff's excessive force claims against Defendants Suardini and Irvine are barred by the "favorable termination" requirement" set forth in *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) and *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Defendants attach a copy of the misconduct report and the hearing report to their brief in support of this contention.

The Supreme Court has held that a claim for declaratory and injunctive relief, as well as for monetary damages, that necessarily implies the invalidity of the punishment imposed as the result of a misconduct conviction, is not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original).

- 3 -

The Supreme Court revisited this issue in *Wilkinson v. Dotson*, 125 S. Ct. 1242 (Mar. 7, 2005), a case in which the plaintiffs claimed that the retroactive application of parole guidelines violated the Constitution's *Ex Post Facto* and Due Process Clauses. The plaintiffs sought a new parole eligibility review and a new parole hearing in accordance with the correct guidelines. *Wilkinson*, 125 S. Ct. at 1244. In *Wilkinson*, the Court discussed the effect of its decisions in *Heck* and *Edwards*, as well as *Preiser v. Rodriguez*, 411 U.S. 475 (1973) and *Wolff v. McDonnell*, 418 U.S. 539 (1974) on the issue:

> Throughout the legal journey from *Preiser* to *Balisok*, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement--either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody. Thus, *Preiser* found an implied exception to § 1983's coverage where the claim seeks--not where it simply "relates to"-- "core" habeas corpus relief, *i.e.,* where a state prisoner requests present or future release. Cf. *post,* at ----5 (KENNEDY, J., dissenting) (arguing that *Preiser* covers challenges that "relate ... to" the duration of confinement). *Wolff* makes clear that § 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner. *Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence. And *Balisok*, like *Wolff*, demonstrates that habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of not previously invalidated) state confinement. These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)--*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson*, 125 S. Ct. at 1247-48. The Court then concluded that because the plaintiffs' claims did not necessarily imply the invalidity of their convictions or sentences, they could present these claims

- 4 -

in the context of a § 1983 action.  *Id.*  Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983.  *Wilkinson*, 125 S. Ct. at 1247-48; *Edwards*, 520 U.S. at 646.

In *Muhammad v. Close*, 124 S. Ct. 1303 (2004), the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected.  *See Johnson v. Coolman*, No. 03-1909, 2004 WL 1367271, at *1 (6th Cir. June 15, 2004).  In other words, *Edwards* still applies where a plaintiff has lost good time as the result of the misconduct conviction.  Under Michigan law, a prisoner loses good time credits for the month of his major misconduct disciplinary conviction.  *See* MICH. COMP. LAWS § 800.33.  In addition, the warden may order forfeiture of previously accumulated credits.  *Id.*  Plaintiff does not assert that he did not forfeit good time credit for the month of his conviction.

According to the July 22, 2004, misconduct ticket, Defendant Irvine was a witness to Plaintiff's assault of Defendant Suardini.  The August 5, 2004, hearing report indicates that Plaintiff was charged with assault and battery of staff.  In the "Reason for Finding" section of the hearing report, Hearing Officer Mohrman stated:

> Based upon the report as well as the other officer's statement, including the video, I find him guilty.  This hearing officer was not present in the unit that date so has no knowledge of the incident.  The prisoner became disruptive as he was being escorted; the officer would not be moving and trying to control the prisoner's movements unless he had moved first.  Then, at the bottom of the stairs there appears to have been a struggle between the two officers and this prisoner.  The movements of staff are consistent with being kicked or bitten.  I find that the prisoner made non consensual contact with the officer.  The comments to him - that he would kill the officer - are consistent with the fact he deliberately and intentionally kicked and bit him.

(*See* Defendants' Exhibit A.)

The undersigned notes that the Hearing Officer's finding in this case directly contradicts Plaintiff's claim of excessive force. Accordingly, Plaintiff's claim remains noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction. *See Shavers v. Stapleton*, No. 03-2210, 2004 WL 1303359, at *1 (6th Cir. June 9, 2004).

Defendants also claim that Plaintiff's excessive force claims lack merit because the use of force by Defendants Suardini and Irvine was justified in light of Plaintiff's conduct. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper

the severity of the forceful response.  *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).  Physical restraints are constitutionally permissible where there is penological justification for their use.  *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

As noted above, the Hearing Officer reviewed a video of the incident, during which he observed that the movements of Defendants Suardini and Irvine were consistent with being kicked or bitten, that Plaintiff made non consensual contact with Defendant Suardini, and that Plaintiff stated that he would kill Defendant Suardini.  In addition, the affidavits of Defendants Suardini and Irvine and the critical incident reports of Defendants Suardini and Irvine, as well as other staff members, all support the finding that Plaintiff resisted staff, and that Defendants Suardini and Irvine used a reasonable amount of force to control Plaintiff's behavior.  Therefore, the undersigned recommends that Defendants Suardini and Irvine be granted summary judgment on Plaintiff's excessive force claims.

Defendants contend that they are entitled to summary judgment on Plaintiff's Eighth Amendment claims against Defendants Galloway and Blackford because Plaintiff has failed to show the existence of a serious medical need or that the Defendants were deliberately indifferent to that need.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the

serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 2004 WL 2792016, at *7 (6th Cir. 2004).  If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 2004 WL 2792016, at *6, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farme*r, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

Defendants offer the affidavits of Defendants Galloway and Blackford in support of their claim for summary judgment.  In her affidavit, Defendant Blackford attests that she reviewed the medical records, which showed that she had no contact with Plaintiff during the pertinent time

- 8 -

period.  Defendant Blackford also attests that she never receive a call from unit officers regarding Plaintiff.  Defendant Blackford further states that chart review shows that Plaintiff was seen by R.N. Maki twice for restraint check, and that there was no mention of pain or injuries.  A review of Plaintiff's medical records also reveal that he was seen at 11:55 p.m. on July 21, 2004, and on July 22, 2004, with no mention of injuries or pain.  Plaintiff was scheduled to be seen on July 26, 2004, in the nurse clinic, but refused call out.  Defendant Blackford attests that Plaintiff kited and complained of right and left thumb numbness and tingling, was seen by the Medical Service Provider, and an x-ray was ordered.  Defendant Blackford attests that the x-ray did not reveal any fracture.  (*See* Defendants' Exhibit C.)

Defendant Galloway attests that she saw Plaintiff on July 21, 2004, at 11:55 p.m. for a routine restraint check.  During this check, Plaintiff was standing at his cell door talking loudly to other inmates.  Plaintiff immediately began to raise his voice when he saw Defendant Galloway approaching.  Plaintiff complained to Defendant Galloway about his medications and his inability to remove his tee shirt while in restraints.  Defendant Galloway attests that she refused Plaintiff's request to have officers remove the restraints in order for Plaintiff to take off his tee shirt because there was no medical reason to do so.  Plaintiff's other concern was that his medications had been taken to Health Services for unit dose dispensing while he was in restraints.  However, because Plaintiff was in standing restraints, there was no reason he could not have his medications in his cell. Therefore, Defendant Galloway returned Plaintiff's medications to him.  Defendant Galloway attests that when she brought Plaintiff his medications, she gave him part of the medications, told him to carry them to his footlocker, and then come back to the door for the rest so that he would not drop them on the floor.  Defendant Galloway states that Plaintiff was agreeable and moved with ease to

the footlocker and back.  Plaintiff did not complain about any assault or show any sign of injuries. (*See* Defendants' Exhibit D.)

Defendant Galloway attests that she did a second restraint check at 4:00 a.m. on July 22, 2004, and observed Plaintiff lying on his bunk in no apparent distress.  When Defendant Galloway asked Plaintiff if he was okay, he stated "no" in a sarcastic tone and turned his back to Defendant Galloway, refusing to answer any further questions.  Plaintiff's restraints were removed at 7:32 p.m. on July 22, 2004.  (*See* Defendants' Exhibit D.)

In his response, Plaintiff reasserts the allegations set forth in his complaint.  Plaintiff states that he suffered minor lacerations and cuts to his forehead, left knee and both wrists, but fails to offer medical records or other evidence in support of this assertion.  Therefore, the undersigned concludes that Plaintiff has failed to show the existence of a genuine issue of material fact on this claim, and recommends that Defendants Blackford and Galloway be granted summary judgment.

Finally, Defendants claim that they are entitled to summary judgment on Plaintiff's First Amendment free speech claim.  Prisoners possess the right of free speech under the First and Fourteenth Amendments.  However, this right does not include the right to call prison officials names, or to verbally abuse prison officials.  As noted by Defendants, "protected speech" is speech regarding matters of public interest or concern. *Rankin v. McPherson*, 483 U.S. 378 (1987); *Connick v. Myers*, 461 U.S. 138 (1983).  Because Plaintiff's comments to the Hearing Officer clearly do not qualify as such, Defendants are entitled to summary judgment on the First Amendment claims.

Finally, Defendants assert that they are entitled to qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999);

*Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

   The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

   When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012.  An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

   When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff.  Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).  Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge.  "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible

- 11 -

than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir.

1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Id*. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). As noted above, Plaintiff has not shown a violation of clearly established law. Therefore, the undersigned recommends a finding that Defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #27) be granted and that this case be dismissed in its entirety.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

- 13 -

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140

(1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  July 28, 2006